NOT FOR PUBLICATION
## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FRANK SZCZEPANIK and BARBARA SZCZEPANIK, | : |
| Plaintiffs, | : Civ. No. 07-3959 |
| v. | : **OPINION and ORDER** |
| THROUGH TRANSPORT MUTUAL INSURANCE ASSOCIATION, LTD. d/b/a T.T.C., THOMAS MILLER AMERICA'S, INC. d/b/a T.T. CLUB, et al. | : Date: May 21, 2008 |
| Defendants. | : |

**HOCHBERG, District Judge**

Defendants Through Transport Mutual Insurance Association, Ltd. d/b/a T.T.C. ("the Association") and Thomas Miller America's, Inc. d/b/a TT Club ("TMA") move to compel Plaintiffs Frank Szczepanik and Barbara Szczepanik to arbitrate their insurance coverage dispute with the Association and TMA in London, England (DKT#12). The Court must decide whether Plaintiffs, as assignees of the insurance policy between the Association and Mediterranean Shipping Company, SA ("Mediterranean"), are bound by the arbitration provision in the policy. The Court has considered the arguments of the parties on the papers pursuant to Fed. R. Civ. Pro. 78.

I.  BACKGROUND

On April 12, 2004, Plaintiff Frank Szczepanik was operating a straddle carrier on the

grounds of the Port of Elizabeth.[1]  Compl. at 5 ¶ 8.  Daniel Dixon, an employee of Leonard's Express, Inc. ("Leonard's"), was operating a tractor trailer and chassis combination on Port grounds.  Id.  The tractor trailer was owned by Leonard's and the chassis was owned by Mediterranean.  Dixon allegedly drove the tractor trailer through a stop sign and also ignored the hand signals of a security guard.  Id.  Szczepanik attempted to stop the straddle carrier in order to avoid a collision with the tractor trailer.  Id.  In attempting to stop short, the straddle carrier "almost tipped . . . over before it stopped and fell back to the ground."  Id.  As a result, Plaintiff alleges he was "permanently and totally disabled from employment as a longshoreman."  Comp. at 2 ¶ 3.

Plaintiffs filed suit in the New Jersey Superior Court, Law Division, Essex County against Dixon and Leonard's to recover for Szczepanik's injuries.  During discovery, Plaintiffs learned that Leonard's had insurance coverage with a policy limit of one million dollars issued by Lincoln General Insurance Company ("Lincoln General").  Compl. at 2 ¶ 4.  Plaintiffs also learned that the Association had issued a separate insurance policy on the chassis that Dixon was pulling at the time of the accident.  Compl. ¶ 5.  The chassis was owned by Mediterranean.  Plaintiffs sought insurance coverage from Leonard's and Defendants.  Defendants refused coverage or to provide indemnity to Leonard's and Dixon.  Compl. at 5 ¶ 10-11.  Leonard's and Dixon entered into a settlement agreement with Plaintiffs, which provided that Leonard's and Dixon would be partially released from liability in exchange for the payment of one million dollars under Leonard's insurance policy with Lincoln General, and "Dixon and Leonard's would

---

[1] The Complaint elsewhere states that the accident occurred at the Port of Newark. See Compl. at 2 ¶ 2.

assign the [Plaintiffs] their rights to excess insurance coverage against the putative excess insurance carrier." Comp. ¶ 7. Defendants are the "putative excess insurance carriers" referenced in the settlement agreement.

Plaintiffs filed their complaint in Superior Court of New Jersey, Law Division, Hudson County on April 9, 2007 seeking a declaratory judgment that the insurance policy between the Association and Mediterranean is excess insurance coverage available to Plaintiffs as assignees of Leonard's. Defendants removed to this Court on August 18, 2008 pursuant to § 205 of the Convention on Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201, et. seq., ("the Convention").[2] Defendants now move to compel Plaintiffs to arbitrate their insurance dispute in London, England in accordance with the arbitration clause in the insurance policy between Mediterranean and the Association.

## II. STANDARD OF REVIEW

Federal courts operate under a federal policy that favors arbitration, especially with respect to international commercial agreements. Flexi-Van Leasing, Inc. v. Through Transport Mutual Insurance Association, Ltd. and Thomas Miller (Americas) Inc., 108 Fed. App'x 35, 38 (3d Cir. 2004) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985)). Before a federal district court may compel a party to arbitration under the

---

[2] Unlike 28 U.S.C. § 1446(b), the Convention permits removal at any time before trial. Compare 9 U.S.C. § 205 ("Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending."), with 28 U.S.C. § 1446(b) ("notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading").

Convention, however, it "must engage in a limited review, to ensure that a valid agreement to arbitrate exists between the parties and the specific dispute falls within the substantive scope of that agreement." Flexi-Van Leasing, Inc., 108 Fed. App'x at 38 (citing 9 U.S.C. § 4; PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990)).

An arbitration provision in an international commercial agreement is governed by the Convention. Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 448-49 (3d Cir. 2003). Where a dispute arises from an international commercial agreement, four elements determine whether the arbitration agreement is governed by the Convention. Id. at 449. The Court must consider whether: (1) there is an agreement in writing to arbitrate the subject of the dispute; (2) the agreement provides for arbitration in a territory of a signatory to the Convention; (3) the agreement arises out of a legal relationship, contractual or not, which is considered as commercial; and (4) a party to the agreement is not an American citizen or the commercial relationship has a reasonable relation to a foreign state. See id. at 449 & n.13. If all four of those elements are met, the court must order arbitration unless it determines the agreement is null and void. Id. at 449 (citing Ledee v. Ceramiche Ragno, 684 F.2d 184, 186-87 (1st Cir. 1982)).

### III.  ANALYSIS

Plaintiffs apparently take issue with the first of the four factors set forth in Standard Bent Glass, 333 F.3d at 448-49. The remaining factors are undisputed: (2) the policy is an agreement providing for arbitration in London, England, which is a territory of a signatory to the Convention, see ; (3) the policy arises out of a contractual relationship between Mediterranean and the Association that is clearly commercial in nature; (4) the Association is not an American

citizen.

At issue in this case is the first factor: the scope of the arbitration clause. The policy issued by Defendants to Mediterranean provides that "all disputes between you (or anyone else, including your broker) and us relating to the insurance" be arbitrated in London, England. Ex. D at 102, at G3:24.2 (emphasis in original). Plaintiffs raise several arguments to support its position that the arbitration clause in the policy does not apply to them as assignees of Leonard's rights in the policy.

### A.  Third-Party Beneficiary Status

Plaintiffs argue that they are not bound by the arbitration clause because, although they are third-party beneficiaries for purposes of any benefits the policy might confer, as non-signatories they are not "intended" third-party beneficiaries bound by the arbitration clause. Plaintiffs acknowledge that Dixon and Leonard's were bona fide third-party beneficiaries of the insurance policy between the Association and Mediterranean. See e.g., Mot. Ex. C (Plaintiffs' Response to Defendants' Interrogatories) ¶ 1. Plaintiffs also acknowledge that their claim against Defendants is premised on Plaintiffs' status as assignee of Leonard's rights under the policy. See id. As a result, Plaintiffs repeatedly state that, as assignees, they are third-party beneficiaries to the policy. See id.; Opp. at 14 ("Plaintiffs now assert their entitlement to coverage as non signatory third party beneficiaries under the policy of excess insurance.").

These concessions notwithstanding, Plaintiffs seek to avoid the arbitration clause by drawing a distinction between a third-party beneficiary for purposes of the benefits of the contract and an "intended" third-party beneficiary bound by the contract's arbitration clause.

This distinction is not supported by the case law. It is true that "[g]enerally speaking, a party cannot be required to participate in arbitration, rather than adjudication, of a dispute unless it has agreed to submit that dispute, or disputes of like nature, to the arbitral process." Flexi-Van Leasing, Inc. v. Through Transport Mut. Ins. Ass'n., Ltd., 108 Fed. App'x 35, 40 (3d Cir. 2004) (citing United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). The Third Circuit has held, however, that courts will "enforce an arbitration agreement against a non-signatory to an arbitration clause, . . . [if] 'he or she is bound by that agreement under traditional principles of contract and agency law.'" E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S., 269 F.3d 187, 195 (3d Cir. 2001).

It is a traditional principle of contract and agency law in New Jersey that "'[n]on-signatories of a contract . . . may . . . be subject to arbitration if the nonparty is an agent of a party or a third party beneficiary to the contract.'" Jansen v. Salomon Smith Barney, Inc., 776 A.2d 816, 820-21 (N.J. Super. App. Div. 2001) (alterations in original) (cited in Flexi-Van Leasing, 108 Fed. App'x at 40). It is also generally true that, as assignees of Leonard's rights in the policy, Plaintiffs stand in Leonard's shoes. See, e.g., Dome Petroleum Ltd. v. Employers Mut. Liability Ins. Co. of Wisconsin, 131 F.R.D. 63, 69 n.1 (D.N.J. 1990) ("The New Jersey District Court has affirmed the proposition that an assignee of a contract 'stands in precisely the same shoes as its assignors' in regard to the provisions of that contract.") (citing Trailways Finance v. Euro-Flo Tours, Inc., 572 F. Supp. 1227, 1231 (D.N.J.1983)). Finally, as another court has noted in a similar context, "[t]he law is clear that a third party beneficiary is bound by the terms and conditions of the contract that it attempts to invoke. 'The beneficiary cannot accept the benefits and avoid the burdens or limitations of a contract'." Interpool Ltd. v. Through Transport Mut.

Ins. Ass'n Ltd., 635 F.Supp. 1503, 1505 (S.D. Fla. 1985).

Leonard's assigned to Plaintiffs Leonard's rights as third party beneficiary. The assignment explicitly provides that Plaintiffs will partially release Leonard's in exchange for $1,000,000 under Leonard's primary policy and the "assignment of [Leonard's] rights to the [Plaintiffs] for any and all excess insurance coverage . . . that would have been available to Leonard's Express to satisfy any judgement obtained by the [Plaintiffs] against Leonard's in this lawsuit." Ex. C at 2 (emphasis added). Based on the text of Plaintiffs' own assignment, which Plaintiffs negotiated to receive as part of their settlement, it is clear that Plaintiffs "wish to 'stand in the shoes'" of the contracting parties and "derive the benefit" of the insurance policy with the Association. Cf. Interpool Ltd., 635 F. Supp. at 1504. And as the Third Circuit has held, "an assignment cannot alter a contract's bargained-for remedial measures, for then the assignment would change the very nature of the rights assigned." Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532-33 (3d Cir. 2005).

As third party beneficiaries to the policy, Plaintiffs are bound by the provision of that policy which requires "all disputes . . . relating to the insurance" to be arbitrated in London, England.

*B. MCS-90 Endorsement*

Plaintiffs also argue that the contract's broad arbitration provision is invalidated by a federally-mandated endorsement entitled "Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980," codified at 49 C.F.R. § 387.15. This provision is also known as the MCS-90 Endorsement.

The Fourth Circuit recently discussed the purpose of the MCS-90 Endorsement. The court explained that

> [s]ections 29 and 30 of the Motor Carrier Act of 1980 mandate that motor carriers hauling general commodities in interstate commerce . . . demonstrate proof of financial responsibility in one of four ways: (1) insurance; (2) a guarantee; (3) a surety bond; or (4) qualification as a self-insurer. 49 U.S.C.A. § 31139(f) (2006). Federal regulations provide that if a registrant opts to pursue the first option and demonstrate its financial responsibility through proof of insurance, the insurer must maintain a "Form MCS-90 Endorsement" as part of the policy. 49 C.F.R. § 387.15 (2006).
>
> ***
>
> As the Department of Transportation explained in promulgating the rule creating the MCS-90, "[t]he purpose of the financial responsibility provisions of the Motor Carrier Act of 1980 is . . . to assure the general public that a motor carrier maintains an adequate level of financial responsibility sufficient to satisfy claims covering public liability." Minimum Levels of Financial Responsibility for Motor Carriers, 46 Fed. Reg. 30,974 (June 11, 1981).

<u>McGirt v. Gulf Ins. Co.</u>, 207 Fed. App'x 305, 307 (4th Cir. 2006). The MCS-90 Endorsement provides in pertinent part that:

> the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980. . . . It is understood and agreed that <u>no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability</u> or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured..

49 C.F.R. § 387.15 (emphasis added).[3]

Plaintiff argues that the arbitration clause in the policy would serve to "relieve the

---

[3] There is no MCS-90 Endorsement attached to the policy under which Plaintiffs seek payment.

company from liability," and is therefore "preempted" by the MCS-90 Endorsement.  Opp. at 9.  Plaintiffs do not direct the Court to a single case in which a court has found that an arbitration clause alone would serve to "relieve" a party from liability in the context of the MCS-90 Endorsement.  An arbitration clause determines the forum and the procedure for dispute resolution, but not the ultimate question of liability.  Moreover, "the court operates under a federal policy that favors arbitration, especially with respect to international commercial agreements."  Flexi-Van Leasing, Inc. v. Through Transport Mut. Ins. Ass'n., Ltd., 108 Fed. App'x 35, 38 (3d Cir. 2004) (citing Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985)).  This overarching policy is inconsistent with Plaintiffs argument that this arbitration clause would, on its own, serve to "relieve the company of liability" in contravention of the MCS-90 Endorsement.  As a result, the Court finds that, assuming without deciding that the MCS-90 Endorsement applies, the arbitration clause is not invalidated as a "condition, provision, stipulation, or limitation contained in the policy".  See 49 C.F.R. § 387.15.

## IV.  CONCLUSION

Federal courts may exercise discretion to dismiss rather than stay an action where all of the claims must be submitted to arbitration.  See, e.g., Flexi-Van Leasing, Inc., 108 Fed. App'x at 38 (affirming the District Court, which "granted the motion on July 31, 2003, ordering the parties to submit to arbitration and dismissing the action").  In the instant case, Plaintiffs seek to assert claims as a third-party beneficiary to the insurance policy between Mediterranean and the Association.  The Court finds that Plaintiffs' status as assignees of Leonard's rights under the contract requires that their dispute be arbitrated in London in accordance with the policy

9

Plaintiffs seek to enforce.

**ACCORDINGLY** it is on this 21st day of May, 2008

**ORDERED** that Defendants' motion to compel arbitration in accord with the terms of the policy at issue is **GRANTED**; and it is further

**ORDERED** that the instant case is dismissed without prejudice; and it is further

**ORDERED** that this case is **CLOSED**.

/s/ Faith S. Hochberg
**HON. FAITH S. HOCHBERG, U.S.D.J.**